## MORRILL, Tutor, *v.* CARR.

Answers to interrogatories on facts and·articles can only be used·against the party interrogated, and not against other parties to the action; the·latter have a·right to·insist on·a cross-examination of the witness by whose testimony they are to be bound.

The fact that property belonging to a succession was purchased at the probate sale by an agent of the administrator, and afterwards transferred to him, will not entitle the heirs to recover the property against a third person, a purchaser from the administrator, in good faith, without notice.

The powers and rights of an administrator under the common law, are not the same as in this State. By·the common law he has the same property in the· goods and· chattels of the deceased as the latter had when living; he may, without a decree of court, sell the assets, and convert them into money for the payment of debts; and to effect a sale made by him, so as to let in the claim·of 'the heir, some fraud, collusion, or misconduct between the parties, must be shown.

APPEAL from the District Court of Natchitoches, *Campbell*, J. *Hertzog* and *Tuomey*, for the appellant. *M. Boyce* and *P. A. Morse*, for the defendant. The· judgment of the court was pronounced by

SLIDELL, J. This is ·a petitory action instituted by the tutor of· a minor to recover certain- slaves which once belonged to· *Denton*, the minor's father. *Denton* was a resident of Arkansas, and died there in the year 1825. *Fowler* was appointed administrator of his estate ; and, by virtue of a decree of· sale rendered by a· competent court in the county of *Denton's* domicil, the slaves were sold at public sale, in 1827, to pay debts of the succession, and *Martin* became the purchaser. *Martin* afterwards sold the slaves to *Fowler*, and, in 1829, *Fowler* sold to *Hyde*, the defendant's lessor, and to one *Shelton*, who afterwards sold his interest to *Hyde*. The possession of *Hyde* has been peaceable and public, since the year 1829. The various sales above mentioned were all made in Arkansas, where slaves are considered personal property. *Hyde* brought the slaves to Louisiana, in 1830, or 1831.

*Fowler* was called in warranty by the defendant *Hyde*. The plaintiff propounded interrogatories to *Fowler*, and at the· trial offered the answers of *Fowler* in evidence, to the admission of which the defendant excepted. We think the court below erred in admitting these answers against *Hyde*. If *Fowler* was a competent witness, upon which point it is unnecessary to express an opinion, the plaintiff should have examined him as any other witness, and then the defendant would have been entitled to, and would have had an opportunity to cross-examine. Here the party has thought proper to proceed *ex parte*, and by way of *interrogatories on facts and articles* propounded to the absent party under commission; and the answers are only available as between the party interrogating and the party interrogated. See the case of *Johnson* v. *Marsh*, ante p. 772.

MORRILL ; The ground upon which the minor's right to a recovery is based is that,
v.
CARR. although the sale was made to *Martin* ostensibly at the public judicial sale, yet
that in reality *Martin* was a mere person interposed and was secretly the agent
of the administrator himself, to whom he afterwards sold the property. If we
exclude the testimony of *Fowler*, which, as we have seen, is inadmissible, the
only evidence to establish the agency of *Martin* for *Fowler*, is the declaration
of a witness that, at a subsequent period, *Fowler* and *Martin* both told him so.
If, upon such testimony, we could be permitted to consider the agency as
proved, the difficulty sill remains that the good faith of *Hyde* is unimpeached.
The plaintiff appealed to his conscience by propounding interrogatories to him,
and his answers distinctly negative all knowledge or notice of the alleged fraud.
Even under our system of jurisprudence we would not be prepared to say that
a purchaser in good faith could be affected by a latent equity of this suit, how-
ever fatal it might be between the heir and *Fowler*, were he still the owner of
the property.

But besides this view of the matter, there is another which appears to us
conclusive. The sale, under which *Hyde* claims and peaceably held the pro-
perty for more than fifteen years, was made in the State of Arkansas, where
the ancestor died, and where his succession was administered. It is proved
that the jurisprudence of the common law prevails there, and that in that State
slaves are considered as personal property. The powers and rights of an admi-
nistrator under that system, as is shown by testimony in this cause, and well
established by commentators, are very different from those of an administrator
in this State. He is there the representative of the deceased as to his goods
and chattels, and has the same property in them as the principal had when liv-
ing. He has authority, even without a decree of sale, to sell the assets, and
convert them into money for the payment of debts. To effect a sale by an ad-
ministrator so as to let in the claim of the heir, there must be some fraud, col-
lusion, or misconduct between the parties. In the present case, there is no
ground to impeach the good faith of *Hyde*; and, if the heir has been wronged,
he must look to the administrator. See 2 Blackstone, 511. 1 Story on Equity,
§ 580. 1 Sugden on Vendors, p. 59.

*Judgment affirmed.*